Good morning, your honors. May it please the court, my name is Christina Nail. I represent the petitioner Joseph Eldabaa. Mr. Eldabaa pled guilty based on assurances from his attorney that the plea agreement and the guideline calculations would get him, and I quote, where he wanted to be. The attorney's advice was inaccurate, this is inaccurate. Can I ask what you mean by assurances? In other words, was he aware of the governing guidelines and he just guessed wrong about what the facts would turn out to be found or was he confused about what the applicable legal rules were? Or do we know? Is there any record about that? The only record, your honor, would be from the letters that were submitted by Mr. Eldabaa in his 2255 habeas motion with regard to the letters that the guideline range would be to Mr. Eldabaa. So it is not clear from the record whether the mistake was a factual or a legal mistake with regard to the attorney, by the attorney. Does it make a difference on that point? That is, I would have thought that usually the real point in these ineffective assistance cases on sentencing is how close did he come? Was it a huge error or a huge misprediction or a small one? And granted, the guideline range would have been huge, but he ended up with ten years when the lawyers seemed to think he might have gotten eight. And I haven't seen any cases that get you in effectiveness for that distance. Can you enlighten me as to what the standard there should be? And I don't think there necessarily is a specific standard with an actual amount of time on when it would become deficient performance. In one of the letters, in the May 27, 2016 letter, the attorney even told Mr. Eldabaa, and this was a possibility that he would be into the five-year mandatory minimum. He might have. They talked him down to ten, which was a long way down. Since you raised the May 27 letter, am I right that in the April letter, he says you could appeal the denial of a suppression motion? It was, in fact, suppressed. It was not going to get the suppression. And still, when he advised him on May 27, is that the correct time sequence? That would be correct, Your Honor. Okay. I mean, as I understood it, really, there are two things that went slightly wrong. One was that without the suppression, they found, the judge found that he did possess the gun when he had an argument that he didn't. And secondly, the meth amount came in much higher. And that latter one, you know, he knew it was arguable, and he, you know, the facts came out differently, or the judge found the facts were different. So, again, how is that ineffective as opposed to simply sometimes you win, sometimes you don't? The deficient performance comes in the advice that, that that calculation advice that he, that the attorney provided to Mr. Eldaba still maintained at the 77 to 96 months for the guideline calculation. But was it a calculation or a prediction as to what it would turn out to be once the facts were found? The way that I interpret his letters would be that this is the guideline calculation that I have for you, especially when he ends that April 11, 2016 letter of, that's where, this, that'll get you where you want to be. Well, that's what the first one says. The May letter doesn't give that emphasizes, if you plead, you can get the three levels, and we'll argue the judge down as far as we can. And he says, I think we have decent sentencing arguments, but he doesn't say that they're, they're necessarily right. Am I correct that the second letter doesn't mention a range, only the first letter? That is correct, Your Honor. Ms. Dale, let me go back to Judge Bogd's earlier question about the difference between the predicted sentence and the actual sentence. You know, we have this case in our circuit, Dovenaire v. U.S., right, which, in which the sentence was three years longer than counsel predicted, and we held that that was not ineffective assistance. Now, how do you distinguish that case from this case? It's, you know, which is not as bad as Dovenaire. I think it is more on what Mr. Aldaba thought, and, and especially when you look at the sentencing hearing transcript, where he says, I wouldn't have pled if I had known how what this outcome would have been. Well, of course, that's true. But the question is whether the trial lawyer is somehow responsible for that disabusing, particularly with regard to the second letter, where he doesn't seem to be telling him anything in particular, other than he'll be better off if you plead than if you don't, because if you don't plead, you're going to be in the same place, but with three levels higher. And I don't disagree. I think you need to take the two letters in conjunction, and where you do have the one letter saying that the sentencing range is 77 to 96 months. It does matter whether he was saying that's the range or that's what I think is going to turn out if all my reasoning turns out to be correct. I mean, he says, you know, I think we can argue him down about this. And then the one thing that gives me pauses, he says there's no gun enhancement. Is that fleshed out anywhere in the record about what he means by that? Not that I'm aware of, Your Honor. But I mean, if he wins the suppression motion, he's going to be better off. In other words, you think what it means is, one possibility of what it means is, if you win the suppression hearing, there's no gun enhancement. I think that would be a, I mean, I guess that would be a potential way to interpret that, Your Honor. And part of it is that the record should be sent back for some type of evidentiary hearing, because that isn't necessarily as clear in the record as to what those conversations with Mr. Aldaba and his attorney had been at that point, then. The plea agreement didn't put in a gun enhancement, right? Correct. What did the plea agreement say at all about the sentencing range? The plea agreement did not specify a sentencing range. But it didn't specify a gun enhancement. Correct. Your Honors, I think I will reserve the remainder of my time here at the minute that's left. Thank you. Yes, Ms. Stewart. Good morning. May it please the Court. I am Paulette Stewart. I am an Assistant U.S. Attorney for the District of Montana. I'm located in the Helena office, and I'm obviously the attorney for the United States in this case. How close did the defense attorney come in this case? There's a 24-month difference between the estimated range in the April 2016 letter and what Mr. Aldaba ultimately sentenced him to. I don't know what he meant by there's no gun enhancement, but suppose what he could establish. That he thought that in order to have a gun enhancement, and he told him you have to have only gun, and since you didn't have only gun, there's no gun enhancement. And I suppose there was a, and I think there is, a clear law of the contrary. He was just completely wrong about that. And so in telling him that essentially there can't be a gun, I'm not saying this is what happened, but suppose what happened was. He said, there can't be a gun enhancement here, because we know you didn't own the gun, and no one's here arguing you own the gun. He said he was flat wrong. Would that 24, would there be no cognizable IAC claim in that instance, even though he wasn't just predicting wrong or dealing with a arguable legal question, but he was just flat wrong about that point. I think in this case, the April letter needs to be taken into account. I'm not asking you about this case, I'm asking you conceptually on my hypothetical. Okay, I think it's a two point enhancement. In most cases, that's not a significant difference. I mean, it's, that's the part I don't understand, because it's two years of somebody's life, first of all. And second of all, it is at least a pretty good chance that the judge is going to be, we assume he has to take into account that difference. So it is supposed to be having some impact on the actual sentence. And why don't we, how can we say there's no prejudice, because it is likely to have an impact on the sentence? Well, I think it's where, I'm not saying anything, he didn't just predict wrong, he was, he just didn't understand law, is my hypothetical. Well, I think if there's a complete lack of understanding, you know, I guess part of the problem is, is the gun enhancement is only two levels. Where in context, what we're talking about is, is, is it's actually a multiple layer process in this letter, it's drug amount, it's no 851, it's no gun enhancement. I didn't ask you about that, but go ahead. It's, it's the denial of the suppression motion, but the gun enhancement in and of itself, just taken completely out of context, is still only a two level enhancement. It may be worth 24 months in Mr. Eldabaugh's case, because he's got a criminal history category of six. But that certainly is prejudiced, unless you think, I mean, the 24 months itself, if it were a foregone conclusion, would certainly be prejudiced, right? I don't think so. You have to be relying on the fact that it's not a foregone conclusion, because the district judge isn't bound by it, right? Correct. Well, if he was bound by it, I mean, if he had the maximum sentence off by two years, definitely there'd be a prejudice, right? What do you mean by that? Because the guidelines are... If, for example, the lawyer told him the maximum sentence was one year, and it was really three years, and he sentenced to three years, the fact that it's only two years isn't going to make any difference, there was prejudice. Okay. But in... Right? But in... The guidelines aren't binding, and the statutory maximum is 40 years. Right. So, I mean, we're talking about the defendant ultimately being sentenced to a quarter of the statutory maximum, and I get that we're playing with the guidelines, but, I mean, there's a larger context to this. And in this case, there's also a larger context, because this letter written in April is written right after the suppression hearing. So, in this case, we've got the investigation, which includes Eldabaugh's statements and statements by his co-conspirators. We've got the suppression hearing that the court held on April 8th. The letter dated April 11th, where this is what I think defense counsel would like to see happen, because he wants the superseding information. And then, it gets rid of the 15-year mandatory minimum that Mr. Eldabaugh was looking at, with the plea to the superseding information. We've got the suppression hearing, we've got the April 11th letter, we've got the change of plea transcript, which follows the plea agreement, and both say, Mr. Eldabaugh, there's no guarantee what your guideline range is. We're only going to know that once your PSR is done, and at the change of plea hearing, it's noted by defense counsel, we're going to argue about the drug weight. Because there were a lot of things in the government's offer of proof that he disputed, but ultimately what he agreed on was that he agreed that he intended to distribute five grams or more of actual methamphetamine. The rest was going to be argued and debated at the sentencing hearing. So, going into all this, this is what we know, and then we actually have the sentencing hearing itself, where Eldabaugh testifies and talks to the court three different times. He's got a friend who testifies, and the court ultimately doesn't believe him, doesn't go with his argument, goes with the higher drug weight that the government, basically from the offer of proof and the suppression hearing, said this is what he's accountable for. That's what the court went with. Counsel, if I could take you back to Judge Berzon's question about the issue of law, can you distinguish deficiency from prejudice? That is, obviously a time of a person's life is prejudice in one sense, but I thought that Drogonier, or however you pronounce it, and those cases would be looking at deficiency. And so, if you make a mistake of whatever sort that just isn't big enough, is there any law that says there's a difference, that it's deficient performance if you miss by even a little bit because of a flat error of law? Have you seen any cases that say that? I have not seen a per se rule that says after 36 months it's per se deficient. No, Counsel, either I'm not saying it or you're not hearing me. It's not the amount, it's suppose it's only two months different, but it's because of a flat error of law. Most of the cases that I see focus on the amount. I take it that some of the questioning earlier talked about prejudice, but you've got to have deficiency first. So, for these kind of habeas purposes, is any error of law, no matter how small, deficient? Then we get to prejudice. Okay. I haven't seen a per se deficiency of law is ineffective. It seems that everything is looked at from the totality of the circumstances and not that pinpointed, Your Honor. And that, you know, in the cases, especially, you know, looking at the cases relevant to Mr. Eldabaugh. But more generally, I guess, Your Honor, we have a little time. More generally, if, I mean, outside of the sentencing area, if an attorney gives a defendant erroneous legal advice and he relies on it and obscenes guilty and says, had he given me the right advice, I wouldn't have pled guilty, he pretty much wins. I mean, he can prove it. And the best examples are the Padilla cases, the immigration cases. If he had told me that I was going to get deported or I had more chance of getting deported or he was legally wrong about what he told me my immigration situation was and if I'd known, I wouldn't have pled guilty. There are plenty of cases which say that that's an inactionable, ineffective assistance to counsel. So this is what I'm struggling with, is why is this situation different? It's different partly because there's a lot of discretion in the judge and therefore you have to account for that in figuring out what the prejudice is and also what the ineffectiveness is. So it has to be, and that's why I keep lighting on this difference between an erroneous projection is not going to be an ineffective assistance, it appears, but why in general is the sentencing context a world of its own? I think it is different because, as Your Honor pointed out, there's a lot of discretion. I mean, nobody's bound by the guideline range. And in this case, the court, although he calculated the guideline range... But they are bound to take it into account. The judge is bound to take it into account, right? He does. He has to take it into account, but ultimately in this case, he looked at what the other co-defendants received for sentences, downward, departed, varied, however we want to put it, went to 120 because that's where he thought Mr. Eldabaugh fell within the co-defendant's range of culpability. And so he didn't stay where the district court, the sentencing court, didn't stay where he calculated the guideline. He went to 120, which was only 24 months higher than the guideline range that the defense counsel and defendant advocated for. And we know that they were advocating for this, and they is the language I'm using, because in the May 27 letter, defense counsel notes that, you know, it's his recommendation to accept the offer, and I'm going to quote, it is exactly what we could get if we went to trial and the jury agreed with all of our arguments. Okay, your time is up. Thank you very much. Thank you. Your Honor, I think I will just rest further on what is in the briefing and ask that the courts consider what we've argued in the briefs here. Thank you very much. Thank you. The case of United States v. Eldabaugh is submitted. We will go to Armstrong v. Reynolds, and again, after that, we will take a break.
judges: Boggs, Tashima, Berzon